**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **EXPRESS MOBILE, INC.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**APPGYVER INC.,**<br><br>**Defendant.** | Civil Action No. _______________<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Express Mobile, Inc. ("Express Mobile" or "Plaintiff"), for its Complaint against Defendant AppGyver Inc. ("AppGyver" or "Defendant"), alleges the following:

## NATURE OF THE ACTION

1. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.

## THE PARTIES

2. Plaintiff is a corporation organized under the laws of the State of Delaware with a place of business at 3415 Custer Rd. Suite 104, Plano, TX 75023.

3. Upon information and belief, AppGyver Inc. is a corporation organized and existing under the laws of the State of Delaware, with a place of business at 180 Sansome Street, Floor 4, San Francisco, CA 94104 and can be served through its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

## JURISDICTION AND VENUE

4. Upon information and belief, Defendant sells and offers to sell products and services throughout the United States, including in this judicial district, and introduces products

and services into the stream of commerce and that incorporate infringing technology knowing that they would be sold in this judicial district and elsewhere in the United States.

5. This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

6. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

7. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), (c), (d) and 1400(b). On information and belief, Defendant is incorporated in the State of Delaware.

8. On information and belief, Defendant is subject to this Court's general and specific personal jurisdiction because Defendant has sufficient minimum contacts within the State of Delaware and this District, pursuant to due process and/or the Delaware Long Arm Statute because Defendant purposefully availed itself of the privileges of conducting business in the State of Delaware and in this District, because Defendant regularly conducts and solicits business within the State of Delaware and within this District, and because Plaintiff's causes of action arise directly from Defendant's business contacts and other activities in the State of Delaware and this District. Further, this Court has personal jurisdiction over Defendant because it is incorporated in Delaware and has purposely availed itself of the privileges and benefits of the laws of the State of Delaware.

**COUNT I – INFRINGEMENT OF U.S. PATENT NO. 6,546,397**

9. The allegations set forth in the foregoing paragraphs 1 through 8 are incorporated into this First Claim for Relief.

10. On April 8, 2003, U.S. Patent No. 6,546,397 ("the '397 patent"), entitled "Browser Based Web Site Generation Tool and Run Time Engine," was duly and legally issued

by the United States Patent and Trademark Office. A true and correct copy of the ’397 patent is attached as Exhibit 1.

11. The inventions of the ’397 patent resolve technical problems related to website creation and generation. For example, the inventions enable the creation of websites through browser-based visual editing tools such as selectable settings panels which describe website elements, with one or more settings corresponding to commands, which features are exclusively implemented utilizing computer technology including a virtual machine.

12. The claims of the ’397 patent do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claims of the ’397 patent recite one or more inventive concepts that are rooted in computerized website creation technology, and overcome problems specifically arising in the realm of computerized website creation technologies.

13. The claims of the ’397 patent recite an invention that is not merely the routine or conventional use of website creation systems and methods. Instead, the invention describes a browser-based website creation system and method in which the user-selected settings representing website elements are stored in a database, and in which said stored information is retrieved to generate said website.

14. The technology claimed in the ’397 patent does not preempt all ways of using website or web page authoring tools nor preempt the use of all website or web page authoring tools, nor preempt any other well-known or prior art technology.

15. Accordingly, each claim of the ’397 patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent on an ineligible concept.

16. In C.A. 2:17-00128, pending in the Eastern District of Texas as of the date of this Complaint, the defendant in that action, KTree Computer Solutions brought a Motion for Judgment on the Pleadings asserting that the ’397 patent, along with U.S. Patent No. 7,594,168 (asserted in Count II below) were invalid as claiming abstract subject matter under 35 U.S.C. § 101. (C.A. 2:17-00128 Dkt. 9.) Subsequent briefing included Plaintiff’s Response and related Declarations and Exhibits (C.A. 2:17-00128 Dkt. 17, 22-24), KTree’s Reply (C.A. 2:17-00128 Dkt. 25), and Plaintiff’s Sur-Reply and related Declarations and Exhibits (C.A. 2:17-00128 Dkt. 26-27). Each of those filings is incorporated by reference into this Complaint.

17. After a consideration of the respective pleadings, Magistrate Judge Payne recommended denial of KTree’s motion, without prejudice, holding that “the claims appear to address a problem particular to the internet: dynamically generating websites and displaying web pages based on stored user-selected settings” and further stating “the asserted claims do not bear all of the hallmarks of claims that have been invalidated on the pleadings by other courts in the past. For example, the claims are not merely do-it-on-a-computer claims.” (Dkt. 29, attached hereto as Exhibit 2.) No objection was filed to the Magistrate Judge’s report and recommendation and the decision therefore became final.

18. Plaintiff is the assignee and owner of the right, title and interest in and to the ’397 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them.

19. Upon information and belief, Defendant has and continues to directly infringe at least claims 1-6, 9, 11-15, 19-20, 23-25, and 35-37 of the ’397 patent by using a browser-based website and/or web page authoring tool in which the user-selected settings representing website elements are stored in a database, and in which said stored information is retrieved to generate

said website (the "Accused Instrumentalities"). To the extent that any particular claim element is deemed to be not literally present in the Accused Instrumentalities, Plaintiff alleges that each such claim element is satisfied pursuant to the doctrine of equivalents because no substantial differences between any such claim element and the corresponding features of the Accused Instrumentalities were found. In each instance, the identified feature of the Accused Instrumentalities performs substantially the same function in substantially the same way to achieve substantially the same results as the corresponding claim element. The Accused Instrumentalities include but are not limited to the website building tools used by Defendant, such as, for example, AppGyver Composer and associated APIs.

20. Upon information and belief, AppGyver is a for-profit organization with revenues of approximately six million U.S.D. per year. Moreover, Defendant, its employees and/or agents utilize the Accused Instrumentalities in the building of websites for Defendant's customers, leading to direct or indirect revenues and profit. As one example of indirect profit, entities such as Defendant will frequently offer website building services at reduced pricing as an inducement to attract customers, who then purchase additional products or services. On information and belief, without the availability of infringing tools such as the Accused Instrumentalities, Defendant would be at a disadvantage in the marketplace and would generate less revenue overall.

21. In particular, claim 1 of the '397 patent generally recites a method enabling production of websites on and for computers with browsers and virtual machines, by presenting, through a browser, a selectable settings menu describing elements, such setting(s) corresponding to commands to the virtual machine; generating a display in accordance with selected settings; storing information regarding selected settings in a database; generating a website at least in part

by retrieving said information; and building web page(s) to generate said website and a run time file, where the run time file uses the stored information to generate virtual machine commands for the display of at least a portion of web page(s).

22. The Accused Instrumentalities infringe claim 1 of the ’397 patent through a combination of features which collectively practice each limitation of claim 1.

23. By way of example, Modern Internet browsers such as Microsoft Internet Explorer, Mozilla’s Firefox, Apple Safari, and Google Chrome include virtual machines within the meaning of the ’397 patent. (*See, e.g.*, http://developer.telerik.com/featured/a-guide-to-javascript-engines-for-idiots/; http://dictionary.reference.com/browse/virtual+machine?s=t). The Accused Instrumentalities support the use of the latest versions of Internet Explorer, Firefox, Safari, and Chrome browsers. (http://composer-docs.appgyver.com/blog/revamped-interface-builder). All of these browsers rely on browser engines comprising virtual machines to interpret and execute JavaScript and HTML to render web pages on a computer. By way of further example, the Accused Instrumentalities enable users to produce websites through browsers on users’ computers via interaction with an Internet server. For example, in order to add a new page to a user’s website, the user logs in and then a server of the Accused Instrumentalities initiates presentation to the user through a browser of a website builder tool. From the UI Interface of the Accused Instrumentalities, the user can navigate and add an element and element properties commensurate with a new page. A display is generated in accordance with one or more user selected settings substantially contemporaneously with the selection thereof. This is performed, for example, using a visual editing tool through a browser. The WYSIWYG interface for selecting center alignment of an image can also be accessed, and then the user can select various options such as a font and paragraph styles. After the user selects options such as image/text

alignment or font and paragraph styles through the WYSIWYG editor, the display immediately updates to reflect the selected option. Furthermore, when images are uploaded by a user, those images are displayed in approximately 0-2 seconds depending on file size and bandwidth. Data is stored including information corresponding to user selected settings such as, for example, the selections of text color. Other user selections are also stored in including, for example, the layout, image filenames, thumbnails, and paragraph margin settings for defining the alignment of an image location. The Accused Instrumentalities build one or more web pages to generate a website from at least a portion of a database and at least one run time file, where at least one run time file utilizes information stored in said database to generate virtual machine commands for the display of at least a portion of said one or more web pages. At run time, at least some of these files use information stored in the database to generate the HTML for the final rendered HTML page. This HTML represents virtual machine commands for display of the page because it is read and used by the applicable browser's engine, including a virtual machine, in order to render the page. On information and belief, the Accused Instrumentalities further rely on the browser engine's component JavaScript engine to either display a portion of the page directly, or generate HTML to be executed for display by the main layout engine. It follows that a user will view the finalized website developed with said tools in a browser outside of the website authoring environment to verify the website conforms to the intended design. (*See, e.g.*, https://www.appgyver.com/pricing/; http://composer-docs.appgyver.com/blog/revamped-interface-builder; http://composer-docs.appgyver.com/docs/guide-interface-builder; http://composer-docs.appgyver.com/docs/guide-theme-and-navigation; https://www.youtube.com/watch?v=Mx4pzAEYn-M; https://www.appgyver.com/; https://www.appgyver.com/enterprise/; http://composer-docs.appgyver.com/docs/guide-data;

http://composer-docs.appgyver.com/docs/guide-integrations; http://composer-docs.appgyver.com/docs/custom-module-getting-started; http://composer-docs.appgyver.com/docs/logic-editor).

24. Claim 2 of the '397 patent generally recites an apparatus for producing websites on and for computers having a browser and a virtual machine, said apparatus comprising an interface to present a settings menu which describes elements, said panel presented through a browser, where the selectable setting(s) corresponds to commands to the virtual machine; a browser to generate a display in accordance with selected setting(s); a database for storing information regarding selected settings; and a build tool having run time file(s) for generating web page(s) and using stored information to generate commands to the virtual machine for generating at least a portion of web page(s).

25. The Accused Instrumentalities infringe claim 2 of the '397 patent through a combination of features which collectively practice each limitation of claim 2.

26. Modern Internet browsers such as Microsoft Internet Explorer, Mozilla's Firefox, Apple Safari, and Google Chrome include virtual machines within the meaning of the '397 patent. (*See, e.g.*, http://developer.telerik.com/featured/a-guide-to-javascript-engines-for-idiots/; http://dictionary.reference.com/browse/virtual+machine?s=t). The Accused Instrumentalities support the use of the latest versions of Internet Explorer, Firefox, Safari, and Chrome browsers. (http://composer-docs.appgyver.com/blog/revamped-interface-builder). All of these browsers rely on browser engines comprising virtual machines to interpret and execute JavaScript and HTML to render web pages on a computer. By way of further example, the Accused Instrumentalities enable users to produce websites through browsers on users' computers via interaction with an Internet server. For example, in order to add a new page to a user's website,

the user logs in and then a server of the Accused Instrumentalities initiates presentation to the user through a browser of a website builder tool. From the UI Interface of the Accused Instrumentalities, the user can navigate and add an element and element properties commensurate with a new page. A display is generated in accordance with one or more user selected settings substantially contemporaneously with the selection thereof. This is performed, for example, using a visual editing tool through a browser. The WYSIWYG interface for selecting center alignment of an image can also be accessed, and then the user can select various options such as a font and paragraph styles. After the user selects options such as image/text alignment or font and paragraph styles through the WYSIWYG editor, the display immediately updates to reflect the selected option. Furthermore, when images are uploaded by a user, those images are displayed in approximately 0-2 seconds depending on file size and bandwidth. Data is stored including information corresponding to user selected settings such as, for example, the selections of text color. Other user selections are also stored in including, for example, the layout, image filenames, thumbnails, and paragraph margin settings for defining the alignment of an image location. The Accused Instrumentalities build one or more web pages to generate a website from at least a portion of a database and at least one run time file, where at least one run time file utilizes information stored in said database to generate virtual machine commands for the display of at least a portion of said one or more web pages. At run time, at least some of these files use information stored in the database to generate the HTML for the final rendered HTML page. This HTML represents virtual machine commands for display of the page because it is read and used by the applicable browser’s engine, including a virtual machine, in order to render the page. On information and belief, the Accused Instrumentalities further rely on the browser engine’s component JavaScript engine to either display a portion of the page directly, or

generate HTML to be executed for display by the main layout engine. It follows that a user will view the finalized website developed with said tools in a browser outside of the website authoring environment to verify the website conforms to the intended design. (*See, e.g.*, https://www.appgyver.com/pricing/; http://composer-docs.appgyver.com/blog/revamped-interface-builder; http://composer-docs.appgyver.com/docs/guide-interface-builder; http://composer-docs.appgyver.com/docs/guide-theme-and-navigation; https://www.youtube.com/watch?v=Mx4pzAEYn-M; https://www.appgyver.com/; https://www.appgyver.com/enterprise/; http://composer-docs.appgyver.com/docs/guide-data; http://composer-docs.appgyver.com/docs/guide-integrations; http://composer-docs.appgyver.com/docs/logic-editor).

27. Claim 3 of the ’397 patent recites the apparatus of claim 2, wherein the database is a multi-dimensional array structured database.

28. The Accused Instrumentalities infringe claim 3 of the ’397 patent through, by way of example, patent through a combination of features which collectively practice each limitation of claim 3.

29. By way of example, the JSON strings/API that are used to generate, in part, home page id’s originate from the database and therefore reflect the database structure and contents showing, on information and belief, the implementation of a multidimensional array structured database. By way of further evidence, the JSON strings/API show that there are dimensions for the pages, for arrays of columns, for arrays of sections, and for arrays of modules generated using AppGyver Composer and the associated APIs. (*See, e.g.*, http://composer-docs.appgyver.com/docs/cloud-mesh; https://www.youtube.com/watch?time_continue=401&v=wHQvfu8mfDM).

30. Claim 4 of the '397 patent recites the apparatus of claim 3, wherein the representative information is Boolean data, numeric data, string data or multi-dimensional arrays of various multimedia objects.

31. The Accused Instrumentalities infringe claim 4 of the '397 patent through a combination of features that practice the limitations of Claim 4.

32. By way of example, the AppGyver API documentation demonstrates data shown as Numeric (number), String data (String), array (array) and Boolean (boolean). (*See, e.g.*, http://docs.appgyver.com/supersonic/api-reference/stable/supersonic/ui/drawers/updateoptions/).

33. Claim 5 of the '397 patent recites the apparatus of claim 4, wherein said elements include multimedia objects selected from the group consisting of a color, a font, an image, an audio clip, a video clip, a text area and a URL.

34. The Accused Instrumentalities infringe claim 5 of the '397 patent through a combination of features that practice the limitations of Claim 5.

35. By way of example, the Accused Instrumentalities include various multimedia objects selected from a group contained within a WYSIWYG Editor. Examples include color, font, an image, an audio clip, a video, a text area and a URL as they appear in the WYSIWYG Editor. The multimedia objects created in the WYSIWYG editor are stored in the database. Text and vector objects can be selected and colored by selecting them in the WYSIWYG editor. A color may also be selected from the color dropdowns on the control bar of the Editor. This color is saved to the database; as part of the HTML of the description record. Moreover, text objects may be assigned a font by making such a selection in the WYSIWYG editor. A font can then be selected from the font dropdown on the control bar of the Editor. This font selection is thereafter saved to the database as part of the HTML of the description record. Selecting the

Image button in the WYSIWYG editor opens a panel. The image file is uploaded to the server and the file's location and style are saved and posted to the database as part of the HTML of the description record. Furthermore, videos are created by clicking on the video element. The video's style elements are saved to the database as part of the HTML of the description record. Moreover, audio is created by clicking on the audio element. The audio style elements are also saved to the database as part of the HTML of the description record. A text area may also be selected for creation by clicking in the frame of the WYSIWYG Editor and typing. The text and its style are saved to the database as part of the HTML of the description record. (*See, e.g.*, http://composer-docs.appgyver.com/docs/guide-interface-builder; http://composer-docs.appgyver.com/docs/guide-theme-and-navigation; https://www.youtube.com/watch?v=Mx4pzAEYn-M; https://www.youtube.com/watch?v=6D01HcKplzk).

36. Claim 6 of the '397 patent recites the apparatus of claim 2, wherein said elements are selected from the group consisting of a button, an image, a paragraph, a frame, a table, a form and a vector object.

37. The Accused Instrumentalities infringe claim 6 of the '397 patent through a combination of features that practice the limitations of Claim 6.

38. By way of example, the Accused Instrumentalities include various user selectable menus where various elements can be placed on a web page. Those various user selectable menus are used to place elements selected from the group consisting of a button, an image, a paragraph, a frame, a table, a form and a vector object. The cells of a table and maps would reside in a frame, and that, dividers, maps and the lines in tables would be, at least in part, vector objects. (*See, e.g.*, http://composer-docs.appgyver.com/docs/guide-interface-builder;

http://composer-docs.appgyver.com/docs/guide-theme-and-navigation; https://www.youtube.com/watch?v=Mx4pzAEYn-M; http://composer-docs.appgyver.com/docs/creating-custom-components; http://composer-docs.appgyver.com/docs/data-form.)

39. Claim 9 recites the apparatus of claim 2, wherein said elements include a button or an image, wherein the selectable settings include an element style, and wherein the build engine includes means for storing information representative of selected style in the database.

40. The Accused Instrumentalities infringe claim 9 of the ’397 patent through a combination of features which collectively practice each limitation of claim 9.

41. By way of example, the Accused Instrumentalities include the ability to store selected styles in a database via the element capabilities. (*See*, *e.g.*, http://composer-docs.appgyver.com/docs/guide-interface-builder; http://composer-docs.appgyver.com/docs/guide-theme-and-navigation; https://www.youtube.com/watch?v=Mx4pzAEYn-M; http://docs.appgyver.com/supersonic/guides/ui/components/#buttons; https://www.appgyver.com/enterprise/; http://composer-docs.appgyver.com/docs/guide-data; http://composer-docs.appgyver.com/docs/guide-integrations; http://composer-docs.appgyver.com/docs/logic-editor; http://composer-docs.appgyver.com/docs/custom-module-getting-started.)

42. Claim 11 recites the apparatus of claim 9, wherein said elements are described by a transformation or a timeline of said selected styles.

43. On information and belief, the Accused Instrumentalities infringe claim 11 of the ’397 patent through a combination of features which collectively practice each limitation of claim 11.

44. By way of example, on information and belief, the Accused Instrumentalities enables the description of elements by a transformation or a timeline for a selected style. By way of further example, on information and belief, the Accused Instrumentalities incorporate various API directive animation and slideshow parameters, CSS-animations, and CSS-transitions that are used extensively for adding transformations and timelines to selected elements. (*See, e.g.*, http://docs.appgyver.com/supersonic/api-reference/stable/supersonic/ui/animate/).

45. Claim 12 recites the apparatus of claim 9, wherein at least one of the elements is a child element and wherein the element style is a child element style.

46. On information and belief, the Accused Instrumentalities infringe claim 12 of the ‘397 patent through a combination of features which collectively practice each limitation of claim 12.

47. By way of example, on information and belief, the Accused Instrumentalities include a slideshow or slider, which contains both child elements and child element styles via the elements that make up the Icon Button, List Divider, and Nav Bar. (*See, e.g.*, http://docs.appgyver.com/supersonic/guides/ui/components/#buttons-icons; http://docs.appgyver.com/supersonic/guides/ui/components/#list-divider; http://docs.appgyver.com/supersonic/guides/ui/components/#navigation-bar; http://docs.appgyver.com/supersonic/guides/ui/styling-native-components/navigation-bar/#navigation-bar).

48. Claim 13 recites the apparatus of claim 12, wherein at least one of the elements is described by timelines of the child elements.

49. On information and belief, the Accused Instrumentalities infringe claim 13 of the ‘397 patent through a combination of features which collectively practice each limitation of claim 13.

50. By way of example, on information and belief, the Accused Instrumentalities include Icon Buttons, List Dividers, Nav Bars, and animation parameters that utilize timelines. (*See, e.g.*, http://docs.appgyver.com/supersonic/api-reference/stable/supersonic/ui/animate/).

51. Claim 14 recites the apparatus of claim 2, wherein said elements include buttons or images, wherein said description of elements is a transition or a timeline which is selected according to input from a mouse, and wherein said build engine includes means for storing information representative of said selected description of elements in said database.

52. On information and belief, the Accused Instrumentalities infringe claim 14 of the ’397 patent through a combination of features which collectively practice each limitation of claim 14.

53. By way of example, on information and belief, the Accused Instrumentalities include various API and CSS libraries that are used extensively for adding transformations and timelines to selected elements. The information for the timeline and transition for an object can be stored in an API or CSS file database that can later be downloaded for execution. (*See, e.g.*, http://docs.appgyver.com/supersonic/api-reference/stable/supersonic/ui/animate/; https://www.appgyver.com/enterprise/; https://www.appgyver.com/; http://composer-docs.appgyver.com/docs/guide-data; http://composer-docs.appgyver.com/docs/guide-

integrations; http://composer-docs.appgyver.com/docs/logic-editor; http://composer-docs.appgyver.com/docs/custom-module-getting-started).

54. Claim 15 recites the apparatus of claim 14, wherein at least one of said description of elements is a timeline or an animation.

55. On information and belief, the Accused Instrumentalities infringe claim 15 of the ’397 patent through a combination of features which collectively practice each limitation of claim 15.

56. By way of example, on information and belief, the Accused Instrumentalities enable descriptions of elements describing animations. (*See, e.g.*, http://docs.appgyver.com/supersonic/api-reference/stable/supersonic/ui/animate/).

57. Claim 19 recites the apparatus of claim 2, wherein the elements include an object and a child object, wherein the description of the elements is a timeline or an animation, and wherein the build engine activates the description of the elements according to input from a mouse.

58. On information and belief, the Accused Instrumentalities infringe claim 19 of the ‘397 patent through a combination of features which collectively practice each limitation of claim 19.

59. By way of example, on information and belief, the Accused Instrumentalities include Icon Buttons, List Dividers, and Nav Bar elements where child objects can be displayed/activated by clicking on a button. Further, the button is capable of including transitions and animations. (*See, e.g.*, http://docs.appgyver.com/supersonic/guides/ui/components/#buttons-icons; http://docs.appgyver.com/supersonic/guides/ui/components/#list-divider;

http://docs.appgyver.com/supersonic/guides/ui/components/#navigation-bar; http://docs.appgyver.com/supersonic/guides/ui/styling-native-components/navigation-bar/#navigation-bar; http://docs.appgyver.com/supersonic/api-reference/stable/supersonic/ui/animate/).

60. Claim 20 recites the apparatus of claim 2, wherein at least one of said elements is a child button or a child object, wherein said description of said elements is a timeline, a transition or an animation, and wherein said build engine includes means for defining said description of said element.

61. On information and belief, the Accused Instrumentalities infringe claim 20 of the ’397 patent through a combination of features which collectively practice each limitation of claim 20.

62. By way of example, on information and belief, the Accused Instrumentalities enable the description of elements as timelines or transition. Moreover, on information and belief, the build engine includes the means for defining said description of said element through a choice of items, such as “Animation.” (*See, e.g.*, http://docs.appgyver.com/supersonic/guides/ui/components/#buttons-icons; http://docs.appgyver.com/supersonic/guides/ui/components/#list-divider; http://docs.appgyver.com/supersonic/guides/ui/components/#navigation-bar; http://docs.appgyver.com/supersonic/guides/ui/styling-native-components/navigation-bar/#navigation-bar; http://docs.appgyver.com/supersonic/api-reference/stable/supersonic/ui/animate/).

63. Claim 23 recites the apparatus of claim 19, wherein said description of elements is a transition or a timeline which is selected according to input from a mouse, and wherein said

build engine includes means for storing information representative of said selected description in said database.

64. On information and belief, the Accused Instrumentalities infringe claim 23 of the ’397 patent through a combination of features which collectively practice each limitation of claim 23.

65. By way of example, on information and belief, the Accused Instrumentalities enables the selection of elements capable of containing properties such as transition animation and can be retrieved from the database through API capabilities. (*See, e.g.*, http://docs.appgyver.com/supersonic/guides/ui/components/#buttons-icons; http://docs.appgyver.com/supersonic/guides/ui/components/#list-divider; http://docs.appgyver.com/supersonic/guides/ui/components/#navigation-bar; http://docs.appgyver.com/supersonic/guides/ui/styling-native-components/navigation-bar/#navigation-bar; http://docs.appgyver.com/supersonic/api-reference/stable/supersonic/ui/animate/).

66. Claim 24 recites the apparatus of claim 2, wherein said run time files include one compressed website specific, customized run time engine program file and one compressed website specific, customized run time engine library file.

67. The Accused Instrumentalities infringe claim 24 of the ’397 patent through a combination of features which collectively practice each limitation of claim 24.

68. By way of example, the Accused Instrumentalities include two customized runtime files, an HTML file, a unique CSS file, and/or a .js file. (*See, e.g.*, https://www.appgyver.com/enterprise/; https://www.appgyver.com/; http://composer-docs.appgyver.com/docs/guide-data; http://composer-docs.appgyver.com/docs/guide-

integrations; http://composer-docs.appgyver.com/docs/logic-editor; http://composer-docs.appgyver.com/docs/custom-module-getting-started).

69. Claim 25 recites the apparatus of claim 24, wherein said run time files include a dynamic web page scaling mechanism, whereby each of said one or more generated web pages is scaled for viewing on said display.

70. The Accused Instrumentalities infringe claim 25 of the ’397 patent through a combination of features which collectively practice each limitation of claim 25.

71. By way of example, the Accused Instrumentalities enable rescaling of a web page to the size of the particular screen that is being used. (*See, e.g.*, https://www.appgyver.com/pricing/; https://www.appgyver.com/).

72. Claim 35 of the ’397 patent generally recites the apparatus of claim 2, wherein the build engine includes dynamic resizing means operable to redefine a size of a web page upon being display.

73. The Accused Instrumentalities infringe claim 35 of the ’397 patent through a combination of features which collectively practice each limitation of claim 35.

74. By way of example, the Accused Instrumentalities enable dynamic resizing upon display to a different device and screen. For example, the Accused Instrumentalities include Responsive Web Design. Responsive Web Design refers to web design that changes formatting and lay-out to respond to different devices, screen sizes and browser capabilities. The Accused Instrumentalities therefore enable the creation of web pages that may be viewed with resizing means operable to redefine a size of a web page upon being displayed. (*See, e.g.*, http://www.w3schools.com/html/html_responsive.asp; https://www.appgyver.com/pricing/; https://www.appgyver.com/).

75. Claim 36 of the ‘397 patent generally recites the apparatus of claim 35, wherein the dynamic resizing apparatus can be invoked in real time during the build process when a new web site file is opened, when the web page size of the existing web site is opened, when the web page size of the existing web site is changed, or when the web page is zoomed to a different size.

76. The Accused Instrumentalities infringe claim 36 of the ‘397 patent through a combination of features which collectively practice each limitation of claim 36.

77. By way of example, the Accused Instrumentalities include a dynamic resizing apparatus that can be invoked in real time during the build process as shown by the Responsive Web Design capabilities. (*See*, *e.g.*, https://www.appgyver.com/).

78. Claim 37 of the ’397 patent generally recites [a]n apparatus for producing websites with web page(s) on and for a computer with a browser and a virtual machine, the apparatus comprising: an interface for building a website through control of website elements, being operable through the browser on to: present a selectable settings menu, accept settings, and generate the display in accordance with an assembly of settings contemporaneously with the acceptance thereof, at least one setting being operable to generate said display through commands to said virtual machine; an internal database associated with the interface for storing information representative of one or more of assembly of settings for controlling elements of the website; and a build tool to construct web page(s) of the website having: an external database containing data corresponding to the information stored in the internal database, and one or more run time files, where said run time files use information stored in the external database to generate virtual machine commands for the display of at least a portion of one or more web pages.

79. The Accused Instrumentalities infringe claim 37 of the ’397 patent through a combination of features which collectively practice each limitation of claim 37.

80. By way of example, modern internet browsers such as Microsoft Internet Explorer, Mozilla’s Firefox, Apple Safari, and Google Chrome include virtual machines within the meaning of the ’397 patent. (*See, e.g.*, http://developer.telerik.com/featured/a-guide-to-javascript-engines-for-idiots/; http://dictionary.reference.com/browse/virtual+machine?s=t). The Accused Instrumentalities support the use of the latest versions of Internet Explorer, Firefox, Safari, and Chrome browsers. (http://composer-docs.appgyver.com/blog/revamped-interface-builder). The Accused Instrumentalities include various multimedia objects selected from a group contained within a WYSIWYG Editor. Examples include color, font, an image, an audio clip, a video, a text area and a URL as they appear in the WYSIWYG Editor. The multimedia objects created in the WYSIWYG editor are stored in the database and appear as HTML scripted text in the database. Text and vector objects can be selected and colored by selecting them in the WYSIWYG editor. A color may also be selected from the control bar of the Editor. This color is saved to the database as part of the HTML of the description record. Moreover, text objects may be assigned a font by making such a selection in the WYSIWYG editor. A font can then be selected from the control bar of the Editor. This font selection is thereafter saved to the database as part of the HTML of the description record. Selecting the Image button in the WYSIWYG editor opens a panel where the user designates source, title, format, size, etc. The image file is uploaded to the server and the file’s location and style are saved and posted to the database as part of the HTML of the description record. Furthermore, videos are created by clicking on the video element button. The video’s style elements are saved to the database as part of the HTML of the description record. Moreover, audio is created by clicking on the audio element button.

The audio style elements are also saved to the database as part of the HTML of the description record. A text area may also be selected for creation by clicking in the frame of the WYSIWYG Editor and typing. The text and its style are saved to the database as part of the HTML of the description record. Furthermore, the Accused Instrumentalities enable data from the client-side form referenced to be stored in a server-side database. (*See, e.g.*, https://www.appgyver.com/pricing/; http://composer-docs.appgyver.com/blog/revamped-interface-builder; http://composer-docs.appgyver.com/docs/guide-interface-builder; http://composer-docs.appgyver.com/docs/guide-theme-and-navigation; https://www.youtube.com/watch?v=Mx4pzAEYn-M; https://www.appgyver.com/; https://www.appgyver.com/enterprise/; http://composer-docs.appgyver.com/docs/guide-data; http://composer-docs.appgyver.com/docs/guide-integrations; http://composer-docs.appgyver.com/docs/custom-module-getting-started).

81. On information and belief, the Infringing Instrumentalities are used, marketed, provided to, and/or used by or for Defendant's partners, clients, customers and end users across the country and in this District.

82. Defendant was made aware of the '397 patent and its infringement thereof at least as early as the filing of this Complaint.

83. Upon information and belief, since at least the time Defendant received notice, Defendant has induced and continues to induce others to infringe at least one claim of the '397 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Defendant's partners, clients, customers, and end users, whose use of the Infringing Instrumentalities constitutes direct infringement of at least one claim of the '397 patent.

84. In particular, Defendant's actions that aid and abet others such as its partners, customers, clients, and end users to infringe include advertising and distributing the Infringing Instrumentalities and providing instruction materials, training, and services regarding the Infringing Instrumentalities. On information and belief, Defendant has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Defendant has had actual knowledge of the '397 patent and knowledge that its acts were inducing infringement of the '397 patent since at least the date Defendant received notice that such activities infringed the '397 patent.

85. Upon information and belief, Defendant is liable as a contributory infringer of the '397 patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States web development technology to be especially made or adapted for use in an infringement of the '397 patent. The Infringing Instrumentalities are a material component for use in practicing the '397 patent and are specifically made and are not a staple article of commerce suitable for substantial non-infringing use.

86. Upon information and belief, since at least the time Defendant received notice, Defendant's infringement has been willful.

87. Plaintiff has been harmed by Defendant's infringing activities.

**COUNT II – INFRINGEMENT OF U.S. PATENT NO. 7,594,168**

88. The allegations set forth in the foregoing paragraphs 1 through 87 are incorporated into this Second Claim for Relief.

89. On September 22, 2009, U.S. Patent No. 7,594,168, entitled "Browser Based Web Site Generation Tool and Run Time Engine," was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the '168 patent is attached as Exhibit 3.

90. The inventions of the ’168 patent resolve technical problems related to website creation and generation. For example, the inventions enable the creation of websites through browser-based build tools and a user interface, which features are exclusively implemented utilizing computer technology.

91. The claims of the ’168 patent do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claims of the ’168 patent recite one or more inventive concepts that are rooted in computerized website creation technology, and overcome problems specifically arising in the realm of computerized website creation technologies.

92. The claims of the ’168 patent recite an invention that is not merely the routine or conventional use of website creation systems and methods. Instead, the invention describes a browser-based website creation system including a server comprising a build engine configured to create and apply styles to, for example, a website with web pages comprised of objects.

93. The technology claimed in the ’168 patent does not preempt all ways of using website or web page authoring tools nor preempt the use of all website or web page authoring tools, nor preempt any other well-known or prior art technology.

94. Accordingly, each claim of the ’168 patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent on an ineligible concept.

95. As noted above and incorporated into this Second Claim for Relief, a defendant in another case in which the ’397 and ’168 patents were asserted, asserted that the ’397 and ’168 patents were invalid under 35 U.S.C. § 101. That motion and related Order are discussed above.

96. Plaintiff is the assignee and owner of the right, title and interest in and to the '168 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them.

97. Upon information and belief, Defendant has and continues to directly infringe at least claims 1-3, and 6 of the '168 patent by using a browser-based website and/or web page authoring tool in which the user-selected settings representing website elements are stored in a database, and retrieval of said information to generate said website (the "Accused Instrumentalities"). The Accused Instrumentalities include but are not limited to Defendant's website building tools, such as AppGyver Composer and the associated APIs.

98. In particular, claim 1 of the '168 patent generally recites a system for assembling a website comprising a server with a build engine, the website comprising web pages with objects (one button or one image object), the server accepting user input to associate a style with objects, wherein a button or image object is associated with a style that includes values defining transformations and time lines; wherein each web page is defined entirely by the objects and the style associated with the object, produce a database with a multidimensional array comprising the objects that comprise the website including data defining the object style, number, and an indication of the web page that each object is part of, and provide the database to a server accessible to web browser; wherein the database is produced such that a web browser with access to a runtime engine is configured to generate the website from the objects and style data extracted from the provided database.

99. The Accused Instrumentalities infringe claim 1 of the '168 patent through a combination of features which collectively practice each limitation of claim 1. (*See, e.g.*, https://developer.mozilla.org/en-US/docs/Web/API/Document_Object_Model,

http://www.w3schools.com/js/js_htmldom.asp; https://www.appgyver.com/pricing/; http://composer-docs.appgyver.com/blog/revamped-interface-builder; http://composer-docs.appgyver.com/docs/guide-interface-builder; http://composer-docs.appgyver.com/docs/guide-theme-and-navigation; https://www.youtube.com/watch?v=Mx4pzAEYn-M; https://www.appgyver.com/enterprise/; https://www.appgyver.com/; http://composer-docs.appgyver.com/docs/guide-data; http://composer-docs.appgyver.com/docs/guide-integrations; http://composer-docs.appgyver.com/docs/custom-module-getting-started; http://docs.appgyver.com/supersonic/api-reference/stable/supersonic/ui/animate/; http://composer-docs.appgyver.com/docs/logic-editor; http://composer-docs.appgyver.com/docs/cloud-mesh; https://www.youtube.com/watch?time_continue=401&v=wHQvfu8mfDM).

100. Further, by way of example, the JSON strings/API that are used by the Accused Instrumentalities to generate, in part, element formatting originate from the database and therefore reflect the database structure and contents showing, on information and belief, the implementation of a multidimensional array structured database comprising the objects that comprise the web site. By way of further evidence, the JSON strings/API show that there are dimensions for the pages, for arrays of columns, for arrays of sections, and for arrays of modules generated using the Accused Instrumentalities.

101. Further, the Accused Instrumentalities enable the storing in the database of data defining each object such as object styles, an object number, and an indication of the which page each object is a part of. For example, a user can select a theme style for a body title on a specific

page. The CSS database file is thereafter saved to the server, reflecting the selected font, size, and the object and page to which it applies.

102. By way of example, for the completed web site, the Accused Instrumentalities include two customized runtime files, an HTML file, a second unique CSS file, and/or a .js file.

103. Claim 2 of the ’168 patent generally recites the system of claim 1, wherein one of said plurality of objects is a child, and wherein the build engine is configured to accept user input to associate a style with child button and child image objects.

104. On information and belief, the Accused Instrumentalities infringe claim 2 of the ’168 patent through a combination of features which collectively practice each limitation of claim 2.

105. By way of example, on information and belief, the Accused Instrumentalities incorporate Icon Buttons, List Dividers, and Nav Buttons, which contain child objects in the form of elements that contain pictures and buttons. Styles can be associated with the pictures and buttons in the slides. (*See, e.g.*, http://docs.appgyver.com/supersonic/guides/ui/components/#buttons-icons; http://docs.appgyver.com/supersonic/guides/ui/components/#list-divider; http://docs.appgyver.com/supersonic/guides/ui/components/#navigation-bar; http://docs.appgyver.com/supersonic/guides/ui/styling-native-components/navigation-bar/#navigation-bar).

106. Claim 3 of the ’168 patent generally recites the system of claim 2, wherein at least one of said styles includes values defining timelines for child button and child image objects.

107. On information and belief, the Accused Instrumentalities infringe claim 3 of the ’168 patent through a combination of features which collectively practice each limitation of claim 3.

108. By way of example, on information and belief, the Accused Instrumentalities incorporate various button and image animation parameters that are used extensively for adding transformations and timelines to selected elements. On information and belief, this includes timelines for child buttons and child image objects. (*See, e.g.*, http://docs.appgyver.com/supersonic/guides/ui/components/#buttons-icons; http://docs.appgyver.com/supersonic/guides/ui/components/#list-divider; http://docs.appgyver.com/supersonic/guides/ui/components/#navigation-bar; http://docs.appgyver.com/supersonic/guides/ui/styling-native-components/navigation-bar/#navigation-bar; http://docs.appgyver.com/supersonic/api-reference/stable/supersonic/ui/animate/).

109. Claim 6 of the ’168 patent generally recites the system of claim 1, where said data is stored as one or more of a Boolean an integer, a string, a floating point variables, or a URL.

110. The Accused Instrumentalities infringe claim 6 of the ’168 patent through a combination of features which collectively practice each limitation of claim 6. A review of the API documentation behind websites created using the Accused Instrumentalities reveals data that is stored as one or more of a Boolean, an integer, or a string. (*See, e.g.*, http://docs.appgyver.com/supersonic/api-reference/stable/supersonic/ui/drawers/updateoptions/).

111. On information and belief, the Infringing Instrumentalities are used, marketed, provided to, and/or used by or for Defendant’s partners, clients, customers and end users across the country and in this District.

112. Defendant was made aware of the ’168 patent and its infringement thereof at least as early as the filing of this Complaint.

113. Upon information and belief, since at least the time Defendant received notice, Defendant has induced and continues to induce others to infringe at least one claim of the ‘168 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Defendant’s partners, clients, customers, and end users, whose use of the Infringing Instrumentalities constitutes direct infringement of at least one claim of the ‘168 patent.

114. In particular, Defendant’s actions that aid and abet others such as its partners, customers, clients, and end users to infringe include advertising and distributing the Infringing Instrumentalities and providing instruction materials, training, and services regarding the Infringing Instrumentalities. On information and belief, Defendant has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Defendant has had actual knowledge of the ‘168 patent and knowledge that its acts were inducing infringement of the ‘168 patent since at least the date Defendant received notice that such activities infringed the ‘168 patent.

115. Upon information and belief, Defendant is liable as a contributory infringer of the ‘168 patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States web development technology to be especially made or adapted for use in an infringement of the ‘168 patent. The Infringing Instrumentalities are a material component for use in practicing the ‘168 patent and are specifically made and are not a staple article of commerce suitable for substantial non-infringing use.

116. Upon information and belief, since at least the time Defendant received notice, Defendant's infringement has been willful.

117. Plaintiff has been harmed by Defendant's infringing activities.

**COUNT III – INFRINGEMENT OF U.S. PATENT NO. 9,471,287**

118. The allegations set forth in the foregoing paragraphs 1 through 117 are incorporated into this Third Claim for Relief.

119. On October 18, 2016, U.S. Patent No. 9,471,287, entitled "Systems And Methods For Integrating Widgets On Mobile Devices," was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the '287 patent is attached as Exhibit 4.

120. The inventions of the '287 patent resolve technical problems related to mobile device application creation and generation. For example, the inventions enable the creation of applications through authoring tools, symbolic names, and a user interface, with features exclusively implemented utilizing computer technology.

121. The claims of the '287 patent do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claims of the '287 patent recite one or more inventive concepts that are rooted in computerized mobile application creation technology, and overcome problems specifically arising in the realm of computerized mobile application creation technologies.

122. The claims of the '287 patent recite an invention that is not merely the routine or conventional use of mobile application creation systems and methods. Instead, the invention describes a mobile application creation system including a computer memory that contains a registry of symbolic names that are associated with user interface objects or widgets, wherein the user interface objects can be integrated into an application.

123. The technology claimed in the ’287 patent does not preempt all ways of using mobile application authoring tools nor preempt the use of all mobile application authoring tools, nor preempt any other well-known or prior art technology.

124. Accordingly, each claim of the ’287 patent recites a combination of elements sufficient to ensure that the claim in practice amounts to significantly more than a patent on an ineligible concept.

125. Plaintiff is the assignee and owner of the right, title and interest in and to the ’287 patent, including the right to assert all causes of action arising under said patents and the right to any remedies for infringement of them.

126. Upon information and belief, Defendant has and continues to directly infringe at least claims 1-3, 5-9, 11, 13-17, and 19-25, 27-28 of the ’287 patent by using a mobile application authoring tool in which a computer memory that contains a registry of symbolic names that are associated with user interface objects or widgets, wherein the user interface objects can be integrated into an application (the “Accused Instrumentalities”). The Accused Instrumentalities include but are not limited to Defendant’s website building tools, such as AppGyver Composer and the associated APIs.

127. In particular, claim 1 of the ‘287 patent recites a system for generating code to provide content on a display of a device including (1) a computer memory that stores a registry and (2) an authoring tool. The (1) computer memory stores a registry of (a) symbolic names required for evoking one or more web components each related to a set of inputs and outputs of a web service obtainable over a network. The symbolic names are character strings that do not contain either a persistent address or pointer to an output value accessible to the web service. Each symbolic name has an associated data format class type corresponding to a subclass of User

Interface (UI) objects that support the data format type of the symbolic name and has a preferred UI object. The (1) computer memory also includes an address of the web service. The (2) authoring tool is configured to define a (UI) object for presentation on the display and the defined UI object corresponds to a web component included in the registry selected from a group consisting of an input of the web service and an output of the web service. Each defined UI object is either selected by a user of the authoring tool or automatically selected by the system as the preferred UI object corresponding to the symbolic name of the web component selected by the user of the authoring tool. The (2) authoring tool is also configured to access the computer memory to select the symbolic name corresponding to the web component of the defined UI object. The (2) authoring tool is also configured to associate the selected symbolic name with the defined UI object, where the selected symbolic name is only available to UI objects that support the defined data format associated with that symbolic name. The (2) authoring tool is further configured to produce an Application including the selected symbolic name of the defined UI object, where the Application is a device-independent code. The authoring tool also includes a Player, where the player is a device-dependent code, wherein, when the Application and Player are provided to the device and executed on the device, and when the user of the device provides one or more input values associated with an input symbolic name to an input of the defined UI object: (i) the device provides the user provided one or more input values and corresponding input symbolic name to the web service; (ii) the web service utilizes the input symbolic name and the user provided one or more input values for generating one or more output values having an associated output symbolic name; (iii) the Player receives the output symbolic name and corresponding one or more output values and provides instructions for the display of the device to present an output value in the defined UI object.

128. The Accused Instrumentalities infringe claim 1 of the ‘287 patent through a combination of features which collectively practice each limitation of claim 1.

129. By way of example, the Accused Instrumentalities demonstrate code generation through Java and CSS capabilities. Further, by way of example, the JSON strings/API that are used by the Accused Instrumentalities to generate, in part, element formatting originate from a computer memory and registry and therefore reflect the presence of symbolic names. Each symbolic name corresponds to a UI object, such as a particular element. As a further example, an authoring tool is demonstrated through features such as UI Interface. The Accused Instrumentalities access a computer memory, or server, to select the symbolic name corresponding to the web component of the defined UI object, evidenced by JSON string/API formatting, associate the selected symbolic name with the defined UI object, such as JSON string/API corresponding to element, where the selected symbolic name is only available to UI objects that support the defined data format associated with that symbolic name, such as the element associated with that API/JSON string. By way of further example, the Accused Instrumentalities produce a responsive or native Application. Additionally, the Accused Instrumentalities include a runtime player. Further example, a user of a device can provide an input value associated with an input symbolic name to an input of a defined UI object, such as selecting a video element. The video element is associated with symbolic name via the API/JSON formatting. Lastly, as a final example, the runtime player within the Accused Instrumentalities receives the output name, output value, and provides instructions for a display as shown by the rendering of the element, such as the ultimate streaming of a video. (*See, e.g.*, http://composer-docs.appgyver.com/docs/guide-interface-builder; https://www.youtube.com/watch?v=Mx4pzAEYn-M; https://www.appgyver.com/;

https://www.appgyver.com/enterprise/; http://composer-docs.appgyver.com/docs/guide-data; http://composer-docs.appgyver.com/docs/guide-integrations; http://composer-docs.appgyver.com/docs/logic-editor; http://composer-docs.appgyver.com/docs/custom-module-getting-started; https://www.appgyver.com/pricing/; http://www.appgyver.io/steroids; http://composer-docs.appgyver.com/docs/data-form; https://www.youtube.com/watch?v=6D01HcKplzk).

130. Claim 2 of the '287 patent recites the system of claim 1, wherein the registry includes definitions of input and output related to the web service.

131. The Accused Instrumentalities infringe claim 2 of the '287 patent through a combination of features which collectively practice each limitation of claim 2.

132. By way of example, the Accused Instrumentalities include JSON formatting/API, which include a registry and input and output definitions. (*See, e.g.*, https://www.appgyver.com/enterprise/; http://composer-docs.appgyver.com/docs/logic-editor; http://composer-docs.appgyver.com/docs/guide-integrations; http://composer-docs.appgyver.com/docs/custom-module-getting-started; http://composer-docs.appgyver.com/docs/guide-interface-builder; http://composer-docs.appgyver.com/docs/guide-theme-and-navigation; https://www.youtube.com/watch?v=Mx4pzAEYn-M; https://www.appgyver.com/).

133. Claim 3 of the '287 patent recites the system of claim 1, wherein the web component is a text chat, a video chat, an image, a slideshow, a video, or an RSS feed.

134. The Accused Instrumentalities infringe claim 3 of the '287 patent through a combination of features which collectively practice each limitation of claim 3.

135. By way of example, the Accused Instrumentalities include web components such as images and videos. (*See, e.g.*, https://www.appgyver.com/; https://www.youtube.com/watch?v=6D01HcKplzk; http://composer-docs.appgyver.com/docs/chat).

136. Claim 5 of the '287 patent recites the system of claim 1, wherein the UI object is an input field for a web service.

137. The Accused Instrumentalities infringe claim 5 of the '287 patent through a combination of features which collectively practice each limitation of claim 5.

138. By way of example, the Accused Instrumentalities include input fields via API/JSON formatting. (*See, e.g.*, https://www.appgyver.com/; https://www.youtube.com/watch?v=6D01HcKplzk; https://www.appgyver.com/enterprise/; http://composer-docs.appgyver.com/docs/logic-editor; http://composer-docs.appgyver.com/docs/guide-integrations; http://composer-docs.appgyver.com/docs/custom-module-getting-started).

139. Claim 6 of the '287 patent recites the system of claim 1, where the UI object is an input field usable to obtain the web component, where the input field includes a text field, a scrolling text box, a check box, a drop down-menu, a list menu, or a submit button.

140. The Accused Instrumentalities infringe claim 6 of the '287 patent through a combination of features which collectively practice each limitation of claim 6.

141. By way of example, the Accused Instrumentalities include input fields such as text fields and buttons. (*See, e.g.*, https://www.appgyver.com/; http://composer-docs.appgyver.com/docs/guide-interface-builder; http://composer-

docs.appgyver.com/docs/guide-theme-and-navigation; https://www.youtube.com/watch?v=Mx4pzAEYn-M).

142. Claim 7 of the '287 patent recites the system of claim 1, where the web component is an output of a web service, is the text provided by one or more simultaneous chat sessions, is the video of a video chat session, is a video, image, a slideshow, an RSS display, or an advertisement.

143. The Accused Instrumentalities infringe claim 7 of the '287 patent through a combination of features which collectively practice each limitation of claim 7.

144. By way of example, the Accused Instrumentalities include web components, such as video and image. (*See, e.g.*, https://www.appgyver.com/; https://www.youtube.com/watch?v=6D01HcKplzk; http://composer-docs.appgyver.com/docs/chat).

145. Claim 8 of the '287 patent recites the system of claim 1, where the authoring tool is further configured to define a phone field or list and generate code that, when executed on the device, allows a user to supply a phone number to the phone field or list.

146. The Accused Instrumentalities infringe claim 8 of the '287 patent through a combination of features which collectively practice each limitation of claim 8.

147. By way of example, the Accused Instrumentalities include content addition properties that are capable of including phone fields or lists. (*See, e.g.*, https://www.appgyver.com/; http://composer-docs.appgyver.com/docs/data-form; http://composer-docs.appgyver.com/docs/logic-editor; http://composer-docs.appgyver.com/docs/custom-module-getting-started).

148. Claim 9 of the ‘287 patent recites the system of claim 1, where the authoring tool is further configured to define a SMS field or list and generate code that, when executed on the device, allows a user to supply an SMS address to the SMS field or list.

149. The Accused Instrumentalities infringe claim 9 of the ‘287 patent through a combination of features which collectively practice each limitation of claim 9.

150. By way of example, the Accused Instrumentalities include content addition properties that are capable of including SMS fields or lists. (*See, e.g.*, https://www.appgyver.com/; http://composer-docs.appgyver.com/docs/data-form; http://composer-docs.appgyver.com/docs/logic-editor; http://composer-docs.appgyver.com/docs/custom-module-getting-started).

151. Claim 11 of the ‘287 patent recites the system of claim 1, where the code is provided over the network.

152. The Accused Instrumentalities infringe claim 11 of the ‘287 patent through a combination of features which collectively practice each limitation of claim 11.

153. By way of example, the Accused Instrumentalities include code provided via API and the interface or database. (*See, e.g.*, https://www.appgyver.com/enterprise/; https://www.appgyver.com/).

154. Claim 13 of the ‘287 patent recites the system of claim 1, where the Player is activated and runs in a web browser.

155. The Accused Instrumentalities infringe claim 13 of the ‘287 patent through a combination of features which collectively practice each limitation of claim 13.

156. By way of example, the Accused Instrumentalities include the capability to run as a responsive web application. (*See, e.g.*, https://www.appgyver.com/pricing/; https://www.appgyver.com/enterprise/).

157. Claim 14 of the '287 patent recites the system of claim 1, where the Player is a native program.

158. The Accused Instrumentalities infringe claim 14 of the '287 patent through a combination of features which collectively practice each limitation of claim 14.

159. By way of example, the Accused Instrumentalities include the capability to run as a native mobile application. (*See, e.g.*, https://www.appgyver.com/pricing/; https://www.appgyver.com/enterprise/; http://www.appgyver.io/steroids).

160. Claim 15 of the '287 patent recites a method of displaying content on a display of a device having a Player, where the Player is a device-dependent code, where the method includes the steps discussed below. One step includes defining a user interface (UI) object for presentation on the display, where the UI object corresponds to a web component included in a registry of one or more web components selected from a group consisting of an input of a web service and an output of the web service, where each web component includes a plurality of symbolic names of inputs and outputs associated with each web service and where the registry includes: (a) symbolic names required for evoking one or more web components each related to a set of inputs and outputs of the web service obtainable over a network, where the symbolic names are character strings that do not contain either a persistent address or pointer to an output value accessible to the web service; and (b) an address of the web service, and where each defined UI object is either selected by a user of an authoring tool or automatically selected by a system as a preferred UI object corresponding to a symbolic name of the web component

selected by the user of the authoring tool. Another step includes selecting the symbolic name from the web component corresponding to the defined UI object, where the selected symbolic name has an associated data format class type corresponding to a subclass of UI objects that support the data format type of the symbolic name, and has the preferred UI object. Another step includes associating the selected symbolic name with the defined UI object. Another step includes producing an Application including the selected symbolic name of the defined UI object, where the Application is a device-independent code, wherein, when the Application and Player are provided to the device and executed on the device, and when the user of the device provides one or more input values associated with an input symbolic name to an input of the defined UI object: (1) the device provides the user provided one or more input values and corresponding input symbolic name to the web service; (2) the web service utilizes the input symbolic name and the user provided one or more input value for generating one or more output values having an associated output symbolic name; (3) the Player receives the output symbolic name and corresponding one or more output values and provides instructions for the display of the device to present an output value in the defined UI object.

161. The Accused Instrumentalities infringe claim 15 of the ‘287 patent through a combination of features which collectively practice each limitation of claim 15.

162. By way of example, the Accused Instrumentalities demonstrate code generation through Java and CSS capabilities. Further, by way of example, the JSON strings/API that are used by the Accused Instrumentalities to generate, in part, element formatting originate from a computer memory and registry and therefore reflect the presence of symbolic names. Each symbolic name corresponds to a UI object, such as a particular element. As a further example, an authoring tool is demonstrated through features such as UI Interface. The Accused

Instrumentalities access a computer memory, or server, to select the symbolic name corresponding to the web component of the defined UI object, evidenced by JSON string/API formatting, associate the selected symbolic name with the defined UI object, such as JSON string/API corresponding to element, where the selected symbolic name is only available to UI objects that support the defined data format associated with that symbolic name, such as the element associated with that API/JSON string. By way of further example, the Accused Instrumentalities produce a responsive or native Application. Additionally, the Accused Instrumentalities include a runtime player. Further example, a user of a device can provide an input value associated with an input symbolic name to an input of a defined UI object, such as selecting a video element. The video element is associated with symbolic name via the API/JSON formatting. Lastly, as a final example, the runtime player within the Accused Instrumentalities receives the output name, output value, and provides instructions for a display as shown by the rendering of the element, such as the ultimate streaming of a video. (*See, e.g.*, http://composer-docs.appgyver.com/docs/guide-interface-builder; https://www.youtube.com/watch?v=Mx4pzAEYn-M; https://www.appgyver.com/; https://www.appgyver.com/pricing/; https://www.appgyver.com/enterprise/; http://composer-docs.appgyver.com/docs/logic-editor; http://composer-docs.appgyver.com/docs/guide-integrations; http://composer-docs.appgyver.com/docs/custom-module-getting-started; http://composer-docs.appgyver.com/docs/guide-theme-and-navigation; http://www.appgyver.io/steroids; http://composer-docs.appgyver.com/docs/data-form; https://www.youtube.com/watch?v=6D01HcKplzk).

163. Claim 16 of the ‘287 patent recites the method of claim 15, where the registry includes definitions of input and output related to the web service.

164. The Accused Instrumentalities infringe claim 16 of the ‘287 patent through a combination of features which collectively practice each limitation of claim 16.

165. By way of example, the Accused Instrumentalities include JSON formatting/API, which include a registry and input and output definitions. (*See, e.g.*, https://www.appgyver.com/enterprise/; http://composer-docs.appgyver.com/docs/logic-editor; http://composer-docs.appgyver.com/docs/guide-integrations; http://composer-docs.appgyver.com/docs/custom-module-getting-started; http://composer-docs.appgyver.com/docs/guide-interface-builder; http://composer-docs.appgyver.com/docs/guide-theme-and-navigation; https://www.youtube.com/watch?v=Mx4pzAEYn-M; https://www.appgyver.com/).

166. Claim 17 of the ‘287 patent recites the method of claim 15, where the web component is a text chat, a video chat, an image, a slideshow, a video, or an RSS feed.

167. The Accused Instrumentalities infringe claim 17 of the ‘287 patent through a combination of features which collectively practice each limitation of claim 17.

168. By way of example, the Accused Instrumentalities include web components such as images and videos. (*See, e.g.*, https://www.appgyver.com/; https://www.youtube.com/watch?v=6D01HcKplzk; http://composer-docs.appgyver.com/docs/chat).

169. Claim 19 of the ‘287 patent recites the method of claim 15, where the UI object is an input field for a web service.

170. The Accused Instrumentalities infringe claim 19 of the ‘287 patent through a combination of features which collectively practice each limitation of claim 19.

171. By way of example, the Accused Instrumentalities include input fields via API/JSON formatting. (*See, e.g.*, https://www.appgyver.com/; https://www.youtube.com/watch?v=6D01HcKplzk; https://www.appgyver.com/enterprise/; http://composer-docs.appgyver.com/docs/logic-editor; http://composer-docs.appgyver.com/docs/guide-integrations; http://composer-docs.appgyver.com/docs/custom-module-getting-started).

172. Claim 20 of the '287 patent recites the method of claim 15, where the UI object is an input field usable to obtain the web component, where the input field includes a text field, a scrolling text box, a check box, a drop down-menu, a list menu, or a submit button.

173. The Accused Instrumentalities infringe claim 20 of the '287 patent through a combination of features which collectively practice each limitation of claim 20.

174. By way of example, the Accused Instrumentalities include input fields such as text fields and buttons. (*See, e.g.*, https://www.appgyver.com/; http://composer-docs.appgyver.com/docs/guide-interface-builder; http://composer-docs.appgyver.com/docs/guide-theme-and-navigation; https://www.youtube.com/watch?v=Mx4pzAEYn-M).

175. Claim 21 of the '287 patent recites the method of claim 15, where the web component is an output of a web service, is the text provided by one or more simultaneous chat sessions, is the video of a video chat session, is a video, an image, a slideshow, an RSS display, or an advertisement.

176. The Accused Instrumentalities infringe claim 21 of the '287 patent through a combination of features which collectively practice each limitation of claim 21.

177. By way of example, the Accused Instrumentalities include web components, such as video and image. (*See, e.g.*, https://www.appgyver.com/; https://www.youtube.com/watch?v=6D01HcKplzk; http://composer-docs.appgyver.com/docs/chat).

178. Claim 22 of the ‘287 patent recites the method of claim 15, further including defining a phone field or list and generating code that, when executed on the device, allows a user to supply a phone number to the phone field or list.

179. The Accused Instrumentalities infringe claim 22 of the ‘287 patent through a combination of features which collectively practice each limitation of claim 22.

180. By way of example, the Accused Instrumentalities include content addition properties that are capable of including phone fields or lists. (*See, e.g.*, https://www.appgyver.com/; http://composer-docs.appgyver.com/docs/data-form; http://composer-docs.appgyver.com/docs/logic-editor; http://composer-docs.appgyver.com/docs/custom-module-getting-started).

181. Claim 23 of the ‘287 patent recites the method of claim 15, further including defining a SMS field or list and generating code that, when executed on the deivce, allows a user to supply an SMS address to the SMS field or list.

182. The Accused Instrumentalities infringe claim 23 of the ‘287 patent through a combination of features which collectively practice each limitation of claim 23.

183. By way of example, the Accused Instrumentalities include content addition properties that are capable of including SMS fields or lists. (*See, e.g.*, https://www.appgyver.com/; http://composer-docs.appgyver.com/docs/data-form;

http://composer-docs.appgyver.com/docs/logic-editor; http://composer-docs.appgyver.com/docs/custom-module-getting-started).

184. Claim 24 of the ‘287 patent recites the method of claim 15, such that the Player interprets dynamically received, device independent values of the web component defined in the Application.

185. The Accused Instrumentalities infringe claim 24 of the ‘287 patent through a combination of features which collectively practice each limitation of claim 24.

186. By way of example, the Accused Instrumentalities Player/web component interpretation corresponds to the linkage between the web component's input and output values and their linkage to the UI objects' contents. (*See, e.g.*, http://composer-docs.appgyver.com/docs/guide-interface-builder; http://composer-docs.appgyver.com/docs/data-form; https://www.youtube.com/watch?v=6D01HcKplzk; http://composer-docs.appgyver.com/docs/logic-editor).

187. Claim 25 of the ‘287 patent recites the method of claim 15, further including providing the Application and Player over the network.

188. The Accused Instrumentalities infringe claim 25 of the ‘287 patent through a combination of features which collectively practice each limitation of claim 25.

189. By way of example, the Accused Instrumentalities are capable of using API and database properties to send files over the network. (*See, e.g.*, https://www.appgyver.com/enterprise/; https://www.appgyver.com/).

190. Claim 27 of the ‘287 patent recites the method of claim 15, where the Player is activated and runs in a web browser.

191. The Accused Instrumentalities infringe claim 27 of the ‘287 patent through a combination of features which collectively practice each limitation of claim 27.

192. By way of example, the Accused Instrumentalities include the capability to run as a responsive web application. (*See, e.g.*, https://www.appgyver.com/pricing/; https://www.appgyver.com/enterprise/).

193. Claim 28 of the ‘287 patent recites the method of claim 15, where the Player is a native program.

194. The Accused Instrumentalities infringe claim 28 of the ‘287 patent through a combination of features which collectively practice each limitation of claim 28.

195. By way of example, the Accused Instrumentalities include the capability to run as a native mobile application. (*See, e.g.*, https://www.appgyver.com/pricing/; https://www.appgyver.com/enterprise/; http://www.appgyver.io/steroids).

196. On information and belief, the Infringing Instrumentalities are used, marketed, provided to, and/or used by or for Defendant’s partners, clients, customers and end users across the country and in this District.

197. Defendant was made aware of the ’287 patent and its infringement thereof at least as early as the filing of this Complaint.

198. Upon information and belief, since at least the time Defendant received notice, Defendant has induced and continues to induce others to infringe at least one claim of the ‘287 patent under 35 U.S.C. § 271(b) by, among other things, and with specific intent or willful blindness, actively aiding and abetting others to infringe, including but not limited to Defendant’s partners, clients, customers, and end users, whose use of the Infringing Instrumentalities constitutes direct infringement of at least one claim of the ‘287 patent.

199. In particular, Defendant's actions that aid and abet others such as its partners, customers, clients, and end users to infringe include advertising and distributing the Infringing Instrumentalities and providing instruction materials, training, and services regarding the Infringing Instrumentalities. On information and belief, Defendant has engaged in such actions with specific intent to cause infringement or with willful blindness to the resulting infringement because Defendant has had actual knowledge of the '287 patent and knowledge that its acts were inducing infringement of the '287 patent since at least the date Defendant received notice that such activities infringed the '287 patent.

200. Upon information and belief, Defendant is liable as a contributory infringer of the '287 patent under 35 U.S.C. § 271(c) by offering to sell, selling and importing into the United States mobile application development technology to be especially made or adapted for use in an infringement of the '287 patent. The Infringing Instrumentalities are a material component for use in practicing the '287 patent and are specifically made and are not a staple article of commerce suitable for substantial non-infringing use.

201. Upon information and belief, since at least the time Defendant received notice, Defendant's infringement has been willful.

202. Plaintiff has been harmed by Defendant's infringing activities.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment for itself and against Defendant as follows:

A. An adjudication that Defendant has infringed the '397, '168, and '287 patents;

B. An award of damages to be paid by Defendant adequate to compensate Plaintiff for Defendant's past infringement of the '397, '168, and '287 patents, and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C. A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of Plaintiff's reasonable attorneys' fees; and

D. An award to Plaintiff of such further relief at law or in equity as the Court deems just and proper.

Dated: June 9, 2017

DEVLIN LAW FIRM LLC

By: /s/ Timothy Devlin__________
Timothy Devlin
Delaware Bar No. 4241
tdevlin@devlinlawfirm.com
Robert Kiddie (*pro hac vice* to be filed)
Texas Bar No. 24060092
rkiddie@devlinlawfirm.com
1306 N. Broom St., 1st Floor
Wilmington, Delaware 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251

BRENT COON & ASSOCIATES, P.C.

Mary C. Jacob (*pro hac vice* to be filed)
Texas Bar No. 24072165
mary.jacob@bcoonlaw.com
300 Fannin St., Suite 200
Houston, Texas 77002
Telephone: (713) 225-1682
Facsimile: (713) 225-1785

*Attorneys for Plaintiff Express Mobile, Inc.*